**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CAMPAIGN LEGAL CENTER,<br><br>               Plaintiff,<br><br>        v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>             Defendant. | Civil Action No. 18-0053 (TSC) |

**MEMORANDUM IN OPPOSITION TO DEFENDANT FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS**

Mark P. Gaber (D.C. Bar No. 988077)
CAMPAIGN LEGAL CENTER
1411 K St. NW, Ste. 1400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegalcenter.org

*Counsel for Plaintiff*

April 2, 2018

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 1

   I.   CLC Has Standing to Seek Redress for the Injury Congress Expressly Defined
       Pursuant to the Cause of Action Congress Expressly Authorized...................................... 1

     A.  Congress Created a Substantive Right to FEC Action on Administrative Complaints
         and Authorized a Judicial Remedy to Enforce that Right. .............................................. 1

     B.  The Context in Which Section 30109(a)(8)(A) Operates Indicates Congress Intended
         It to Convey a Substantive Right over Which Administrative Complainants Have
         Standing to Sue. ........................................................................................................ 8

CONCLUSION...................................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Buckley v. Valeo*,
    424 U.S. 1 (1976)..................................................................................8

*Citizens for Percy '84 v. FEC*,
    1984 WL 6601 (D.D.C. 1984) .............................................................8

*Common Cause v. FEC*,
    108 F.3d 413 (D.C. Cir. 1997) .............................................................9

*CREW v. FEC*,
    236 F. Supp. 3d 378 (D.D.C. 2017) ................................................4-5

*DCCC v. FEC*,
    831 F.2d 1131 (D.C. Cir. 1987) ..........................................................4

*Families for Freedom v. Napolitano*,
    628 F. Supp. 2d 535 (S.D.N.Y. 2009)..........................................2, 7, 9

*FEC v. Akins*,
    524 U.S. 11 (1998)..............................................................................10

*Fund Democracy, LLC v. SEC*,
    278 F.3d 21 (D.C. Cir. 2002) ......................................................... 9-10

*Gettman v. DEA*,
    290 F.3d 430 (D.C. Cir. 2002) .............................................................9

*Herron for Congress v. FEC*,
    903 F. Supp. 2d 9 (D.D.C. 2012) .........................................................9

*In re Am. Rivers & Idaho Rivers United*,
    372 F.3d 413 (D.C. Cir. 2004)......................................................3, 5, 7

*Judicial Watch, Inc. v. FEC*,
    293 F. Supp. 2d 41 (D.D.C. 2003) ...................................................6, 7

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973)..............................................................................2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)......................................................................2, 4, 5

*Nat'l Parks Conservation Ass'n v. Dep't of Interior*,
    794 F. Supp. 2d 39 (D.D.C. 2011) .......................................................3

*Pub. Citizen v. DOJ*,
    491 U.S. 440 (1989)................................................................................................5

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................2

*WWHT, Inc. v. FCC*,
    656 F.2d 807 (D.C. Cir. 1981) ..............................................................................3

**Statutes**        **Page(s)**

52 U.S.C. § 30119(a)(1)................................................................................................6

52 U.S.C. § 30109(a)(2)................................................................................................6

52 U.S.C. § 30109(a)(4)(A)(ii) .....................................................................................8

52 U.S.C. § 30109(a)(8)(A) ...............................................................................1, 3, 4, 5

52 U.S.C. § 30109(a)(8)(C) ..........................................................................................4


**Other Authorities**        **Page(s)**

125 Cong. Rec. S19099 (daily ed. Dec. 18, 1979)........................................................4

Richard J. Pierce, *Administrative Law Treatise* (5th ed. 2013) ......................................3

## INTRODUCTION

In 2016, Plaintiff Campaign Legal Center ("CLC") filed an administrative complaint with Defendant Federal Election Commission ("FEC") alleging that a private prison company had violated federal law by making contributions to the main super PAC supporting then-candidate Donald Trump. As the complainant, CLC is legally entitled to have the FEC "act on such complaint during the 120-day period beginning on the date the complaint is filed," and if the FEC fails to take timely action, to "file a petition with the United States District Court for the District of Columbia." 52 U.S.C. § 30109(a)(8)(A). The basis for CLC's standing to sue here is thus clear: Congress specifically granted administrative complainants a substantive right to FEC action, and conferred upon them a statutory cause of action to sue to enforce that right.

Rather than explain how Congress ran afoul of Article III of the Constitution in so doing, the FEC's entire brief attacks strawmen—contending that CLC has not suffered certain specific injuries that might flow from the *dismissal* of its administrative complaint. These arguments have no bearing here, where the injury CLC seeks to redress through this statutorily authorized lawsuit is the FEC's failure to take any action whatsoever. The Federal Election Campaign Act ("FECA") and the case law are clear that the party seeking agency action has standing to sue to redress its injury on account of the agency's failure to act. The FEC's motion to dismiss should be denied.

## ARGUMENT

**I.    CLC Has Standing to Seek Redress for the Injury Congress Expressly Defined Pursuant to the Cause of Action Congress Expressly Authorized.**

**A.    Congress Created a Substantive Right to FEC Action on Administrative Complaints and Authorized a Judicial Remedy to Enforce that Right.**

CLC has standing to sue the FEC for its failure to act because Congress granted administrative complainants a substantive right to timely agency action and expressly authorized

1

complainants to file suit to enforce that right. It is axiomatic that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." *Warth v. Seldin*, 422 U.S. 490, 514 (1975); *cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992); *id.* at 580 (Kennedy, J., concurring in part and concurring in opinion) ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before, and I do not read the Court's opinion to suggest a contrary view."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).

When Congress enacts a statute authorizing a person to request agency action, and creates a cause of action to challenge the agency's failure to act upon that request, it exercises its authority to "define injuries and articulate chains of causation." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in opinion). As a result, the party requesting the agency action has standing to file the lawsuit Congress expressly authorized in order to remedy the injury to the right Congress expressly created. In *Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 538 (S.D.N.Y. 2009), the plaintiffs argued that "an agency presented with a petition for rulemaking must, at a minimum, respond to that petition, and that the petitioning party has standing to compel a response unreasonably withheld." The court rightfully found this a simple proposition, describing it as "clear that [the agency] is required to at least definitively respond to plaintiffs' petition—that is, to either deny or grant the petition," *id.* at 540, and "that plaintiffs, as the parties who submitted a petition for rulemaking to [the agency], have standing as to their . . . cause of action" for unreasonable delay—a point then-District Judge Chin explained the agency "conceded . . . correctly" at oral argument, *id.* at 539.

2

In concluding that the plaintiffs properly invoked the court's jurisdiction in *Families for Freedom*, the court cited the D.C. Circuit's decision in *In re American Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004). In *American Rivers*, plaintiffs sued an agency for its non-response to a petition requesting that it engage in interagency consultation regarding an infrastructure project's environmental ramifications. The D.C. Circuit held that the agency's contention that the legal basis for the rulemaking petition was misplaced was "beside the point" in that suit challenging the agency's failure to respond. *Id.* at 419. The court explained that it was "not concerned [] with what answer [the agency] might ultimately give the petitioners," but instead "its failure to give them *any* answer." *Id.* (emphasis in original). This was not a novel holding. *See, e.g.*, *WWHT, Inc. v. FCC*, 656 F.2d 807, 813 (D.C. Cir. 1981) ("[A]n agency must receive and respond to petitions for rulemaking . . . ."); *Nat'l Parks Conservation Ass'n v. Dep't of Interior*, 794 F. Supp. 2d 39, 44 (D.D.C. 2011) ("[A]n agency 'is required to at least definitively respond to . . . [a] petition—that is, to either deny or grant the petition.'" (quoting *Families for Freedom*, 628 F. Supp. 2d at 540)); Richard J. Pierce, *Administrative Law Treatise* 517 (5th ed. 2013) ("At a minimum, the right to petition for rulemaking entitles a petitioning party to a response to the merits of the petition.").

These authorities demonstrate precisely why CLC has standing to sue the FEC for failing to act upon its administrative complaint. Congress provided that "[a]ny person who believes a violation of [FECA] has occurred[] may file a complaint with the [FEC]," and that "[a]ny party aggrieved by an order of the [FEC] dismissing a complaint filed by such party . . . *or by a failure of the [FEC] to act* on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." 52 U.S.C. § 30109(a)(8)(A) (emphasis added). In such a proceeding, "the court may

3

declare . . . the failure to act is contrary to law, and may direct the [FEC] to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

Through this statutory scheme, Congress exercised its power to "define injuries and articulate chains of causation that will give rise to a case or controversy" sufficient to confer Article III standing. *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring). Here, Congress expressly defined an injury and a chain of causation—the FEC's failure to act upon an administrative complaint within 120 days—and thus CLC's complaint, filed pursuant to the express cause of action Congress created, states a "case or controversy" seeking to redress the injury to its statutorily conferred right.[1] *Id.* CLC's injury-in-fact is the FEC's failure to act upon its administrative complaint, an injury caused by FEC's inaction exceeding 120 days, and an injury this lawsuit can redress given this Court's authority to order the FEC to take action pursuant to 52 U.S.C. § 30109(a)(8)(C). Just like the plaintiffs who had standing to sue for inaction in *Families for Freedom*, CLC has standing to sue for inaction here.[2] Indeed, CLC's position is even stronger, in light of the explicit timetable Congress adopted in FECA. *See* 52 U.S.C. § 30109(a)(8)(A).

---

[1] That Congress intended to define injuries and chains of causation sufficient to confer standing is amply demonstrated by the plain text of §§ 30109(a)(8)(A) & (C), but the legislative history underscores the point. Senator Claiborne Pell, the chair of the relevant Senate committee, stated that the provision was designed to ensure "that the Commission does not shirk its responsibility to decide" whether to pursue administrative complaints, and thus Congress "provide[d] that a total failure to address a complaint within 120 days is a basis for a court action." 125 Cong. Rec. S19099 (daily ed. Dec. 18, 1979) (statement of Sen. Pell).

[2] The fact that CLC's administrative complaint seeks enforcement rather than rulemaking is irrelevant for standing purposes. Just as an agency must explain why it takes any given rulemaking action, the FEC must "explain coherently the path [it is] taking" when it resolves an enforcement matter. *DCCC v. FEC*, 831 F.2d 1131, 1133 (D.C. Cir. 1987). Likewise, the FEC's prosecutorial discretion does not extend to simply ignoring administrative complaints. *Cf. CREW v. FEC*, 236 F. Supp. 3d 378, 390 (D.D.C. 2017) ("When the FEC exercises prosecutorial discretion, its

In conferring standing to the administrative complainant to sue the FEC for inaction, Congress did not improperly "confer[] upon *all* persons [] an abstract . . . 'right' to have the Executive observe the procedures required by law." *Lujan*, 504 U.S. at 573 (emphasis in original). Rather, Congress created a tangible right for a limited and narrowly defined set of persons—a right to agency action enforceable by the administrative complainant, not just any observer desiring timely FEC consideration of enforcement matters.[3] Congress acted within its authority in doing so. *Cf. Pub. Citizen v. DOJ*, 491 U.S. 440, 449-50 (1989) (reasoning that party demanding disclosure under Federal Advisory Committee Act did not suffer a "lessen[ed] . . . injury" because another group could have requested disclosure and sued, citing similar rule with respect to Freedom of Information Act). It is beyond dispute that CLC has suffered an injury to its statutorily created right—a right to action on its administrative complaint—and that Congress expressly authorized CLC's lawsuit to redress that injury. Article III requires nothing more.

The FEC's brief disregards the plain text of FECA and the case law holding that parties who seek agency action have standing to sue over agency inaction. The FEC instead proceeds as if this were a lawsuit challenging the *dismissal* of CLC's complaint, rather than the FEC's failure to take any action whatsoever. But the injuries faced upon dismissal of an administrative complaint

---

controlling statement of reasons must be sufficiently detailed so as to allow a reviewing court to determine why the controlling commissioners decided to forego prosecution."); *see also* FEC Br. at 14 (noting that Congress created an "explicit provision for judicial review of . . . [FEC] action or failure to take action" (internal quotation marks omitted)).

[3] Congress expressly defined the conditions that would "aggrieve" a complainant with respect to delay—the failure of the agency to act within 120 days—but did not expressly define the conditions that would "aggrieve" a complainant if the complaint was dismissed. *See* 52 U.S.C. § 30109(a)(8)(A). The statutory text thus demonstrates that Congress intended for a complainant whose complaint is unlawfully delayed to have standing to sue, even if that complainant would not have standing to judicially challenge the dismissal of the complaint. The latter must be judged based upon the substance of the FEC's ultimate decision, but as the D.C. Circuit instructed in *American Rivers*, now is not the time to consider the substantive merits of the complaint. *See* 372 F.3d at 419.

are distinct from the injuries faced by the FEC's inaction, and the FEC's near-complete reliance on case law regarding the former is therefore misplaced. The FEC contends that CLC lacks standing to vindicate an informational interest vis-à-vis FECA's reporting requirements.[4] *See* FEC Br. at 9-12. But the cases the FEC cites for this proposition center around a decision by the FEC to *dismiss* a complaint. The FEC also alleges that CLC lacks standing based on a desire to have the FEC "get the bad guys." FEC Br. at 8-9. Again, this argument plainly misstates the issue here. The FEC cites cases for this proposition that are about FEC *action*—the substantive dismissals of complaints. Those cases involve the antithesis of the sole issue here: FEC *in*action. Congress did not create a right to any particular substantive outcome following the FEC's consideration of an administrative complaint, and thus an administrative complainant is not necessarily aggrieved by a dismissal merely because it instituted the administrative proceedings. But an administrative complainant whose complaint is ignored *is* aggrieved, because Congress conferred the right to agency action and created a cause of action when that right was injured. The Court should reject the FEC's invitation to conflate the two statutory causes of action and the critical distinctions between the two types of injuries that give rise to them.

The only case the FEC cites involving standing in a case challenging agency inaction is *Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003) (Leon, J.), but that case predated the D.C. Circuit's decision in *American Rivers*. In *Judicial Watch*, the Court noted that the plaintiff

---

[4] In so claiming, the FEC incorrectly asserts that "CLC already alleges that GC Holdings [a wholly-owned subsidiary of GEO Group Inc.] is the true source of the funds" that were contributed to the super PAC, FEC Br. at 10-11 (citing Compl. ¶¶ 1, 8, 18), and thus CLC has no informational injury. The paragraphs the FEC cites do not use the phrase "true source," nor does CLC purport to know the true source of GC Holdings' reported contributions to the super PAC. Indeed, no one yet knows whether GEO Group Inc. is the true source of GC Holdings' contributions—nor is anyone likely to know until the FEC takes some action on CLC's administrative complaint. And in any event, FECA prohibits direct *and* indirect contributions by federal contractors. *See* 52 U.S.C. §§ 30119(a)(1) & (2).

"appears to claim that the [FEC's] delay in responding to his claim is, in and of itself, an injury in fact," although "this argument was not specifically set forth in plaintiffs' papers," but only was raised "during oral argument." *Id.* at 48. In rejecting the unbriefed argument, the Court relied exclusively upon a case involving standing to challenge dismissal of an administrative complaint. *See id.* (quoting *Common Cause v. FEC*, 108 F.3d 413, 418 (D.C. Cir. 1997)). But as explained above, the injuries caused by inaction and dismissal are distinct; Congress has defined a particular statutory right to agency action and authorized a cause of action to enforce that right in this Court. In a subsequent decision challenging agency inaction, rather than the substance of agency action, the D.C. Circuit explained that the legal merit of the party's substantive request is "beside the point," because the court was not concerned with what the agency "might ultimately give petitioners," but rather "its failure to give them *any* answer." *American Rivers*, 372 F.3d at 419 (emphasis in original). That is why, as the court explained in *Families for Freedom*, it is "clear that [an agency] is required to at least definitively respond," 628 F. Supp. 2d at 540, and that "plaintiffs, as the parties who submitted a petition for rulemaking . . . have standing as to their [] cause of action," *id.* at 539, for unreasonable delay. Because agency inaction is indeed a distinct injury, this Court should similarly adhere to the reasoning of *American Rivers* instead of *Judicial Watch*.

In sum, the FEC offers no rationale for how Congress's specific authorization of judicial redress against the injury of FEC inaction could have contravened Article III. The Court should disregard the FEC's strawmen arguments and deny its motion to dismiss.

**B.      The Context in Which Section 30109(a)(8)(A) Operates Indicates Congress Intended It to Convey a Substantive Right over Which Administrative Complainants Have Standing to Sue.**

As explained above, Congress made clear that it was conferring a substantive right to agency action, redressable by an expressly authorized civil suit, not merely a procedural right that confers no standing to sue. Although that is apparent from the text of the statute alone, it is also apparent from the context in which the provision operates.

First, the right to timely FEC action exhibits congressional awareness of the right's important and substantive effects on the democratic process—a process that does not tolerate delay. The decision to include a 120-day timeframe for agency action in § 30109(a)(8)(A) reflects Congress's reasoned judgment about FECA enforcement, a judgment this Court should vindicate. Members of Congress, all of whom were candidates in federal elections, understood well that each election is an exigent event and that FECA enforcement is most effective when done before Election Day. *Cf. Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976) (explaining that FECA was designed, in part, to inform the electorate so it could make decisions in evaluating candidates).[5] Indeed, Congress was sufficiently worried about failures to vindicate FECA before Election Day that it provided an abbreviated timeframe for the FEC to "correct or prevent" violations occurring shortly before an election. *See* 52 U.S.C. § 30109(a)(4)(A)(ii).

_____

[5] Indeed, this Court has in the past chastised the FEC for its failure to take any action on a complaint involving excessive contributions in time for any enforcement action to make a difference. *See Citizens for Percy '84 v. FEC*, 1984 WL 6601, at *3 (D.D.C. 1984) ("The significance of the threat [of allegedly unlawful contributions] to the integrity of the general election should have been obvious from the face of the complaint . . . . [T]he Commission's casual handling of this matter is highlighted by the fact that the Commission's finding of reason to believe [the law had been violated] was not made until . . . more than five months after the complaint was filed. Such dilatory conduct is not explained and cannot be condoned if the statute is to have any meaning.").

Congress's 120-day window is best understood as reflecting this firsthand knowledge and attempting to ensure that, when possible, complainants have their complaints acted upon on a timetable that does not render empty the FEC's eventual action on the complaint. Congress was surely not blind to the reality that once an election law matter reaches the judiciary, it is unlikely that it will be resolved prior to Election Day. *See, e.g.*, *Herron for Congress v. FEC*, 903 F. Supp. 2d 9, 14 (D.D.C. 2012) (noting that "most electoral controversies" cannot "be fully litigated prior to election day"). Thus, Congress enacted section 30109(a)(8)(A) to emphasize the importance of a complainant's right to efficient action at the agency level and to make that right judicially enforceable. The 120-day timeframe prior to judicial review reflects a congressional attempt to give the FEC sufficient time to act while also ensuring that complainants faced with FEC foot-dragging could turn to the federal judiciary—not to address the underlying dispute, but to force the FEC to do so. The importance of that right in helping to ensure transparent and informed voting underscores its substantive character.

Second, the injury to an administrative complainant resulting from FEC inaction is distinct from the injury that results from the substance of FEC action. Thus, administrative complainants have standing to sue to enforce their right to action, *see Families for Freedom*, 628 F. Supp. 2d at 539-40, but because Congress did not create a right to any particular outcome once the FEC actually acts, a party with no concrete injury resulting from a given outcome may not raise a *procedural* challenge to an FEC *dismissal* decision. *See Common Cause v. FEC*, 108 F.3d 413, 418-19 (D.C. Cir. 1997); *see also Gettman v. DEA*, 290 F.3d 430, 433-34 (D.C. Cir. 2002) (holding that party cannot rely upon statutory right to participate in agency proceeding for standing to challenge substance of agency decision through statute authorizing judicial petition for review of final agency action); *Fund Democracy, LLC v. SEC*, 278 F.3d 21, 24, 27 (D.C. Cir. 2002) (holding

that plaintiff had no standing to seek judicial review of final SEC action for procedural right created by SEC regulations). The fact that a litigant may ultimately be unable to challenge the dismissal of its administrative complaint has no bearing on whether the right to agency action is substantive in nature. Congress, having created a distinct right applicable to all administrative complainants—the right to agency action within 120 days—and in the same sentence having characterized those denied that right as "aggrieved" and authorized to sue, must be viewed as having intended that right to be a substantive one enforceable in court. *See FEC v. Akins*, 524 U.S. 11, 19 (1998) (noting that "[h]istory associates the word 'aggrieved' with a congressional intent to cast the standing net broadly").

To conclude otherwise would lead to a situation in which the FEC could insulate itself from meaningful judicial review for failure to act except in the narrowest of circumstances. This cannot be squared with the plain text of section 30109, in which Congress not only contemplated, but expressly empowered, judicial review of inaction after 120 days. To accept the FEC's invitation to conflate standing to challenge inaction with standing to challenge adverse action would defeat this congressional judgment. If the FEC were correct, *see* FEC Br. at 7-12, the only categories of administrative complaints for which the plain text of section 30109(a)(8)(A) would be meaningful would be those alleging reporting violations or a narrow class of electoral competitors who would be obviously "aggrieved" by a dismissal benefiting their electoral opponents. All other types of FECA violations—*e.g.*, excessive contributions, unlawful coordinated expenditures, foreign contributions, unlawful corporate contributions—would be exempt from section 30109(a)(8)(A)'s

requirement that the FEC actually take action, because there would be no way to constitutionally enforce the right to agency action Congress expressly created for administrative complainants.[6]

Congress expressly created a right applicable to all administrative complainants—a right to have the FEC take *some* action—and in the same breath created a cause of action to sue in this Court to enforce that right. Congress cannot have intended to have created a meaningless right. Rather, the plain text of the statute shows that Congress created a substantive right to agency action, and administrative complainants, by virtue of their status as complainants, have standing to vindicate that right in court.

\* \* \*

The FEC's arguments supporting dismissal rest upon inapposite case law about an issue not before this Court—whether CLC will have standing to sue the FEC in the event it eventually dismisses CLC's administrative complaint. We are not there yet. The statute and the case law make clear that CLC has standing to sue the FEC to take action on its administrative complaint.

## CONCLUSION

For the foregoing reasons, the FEC's motion to dismiss should be denied.[7]

---

[6] Adopting the FEC's position would also mean that a bloc of three Federal Election Commissioners could insulate themselves not only from judicial review, but also from public accountability, by declining to vote to close files in which they find no reason to believe a violation has occurred.

[7] To the extent the Court concludes section 30109(a)(8)(A) provides an adequate mechanism for judicial review of the FEC's failure to act, CLC does not object to the dismissal of its separate APA claim.

April 2, 2018                                        Respectfully submitted,

                                                     */s/ Mark P. Gaber*
                                                     Mark P. Gaber (D.C. Bar No. 988077)
                                                     CAMPAIGN LEGAL CENTER
                                                     1411 K Street NW, Suite 1400
                                                     Washington, DC 20005
                                                     (202) 736-2200
                                                     mgaber@campaignlegalcenter.org

                                                     *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2018, I caused the foregoing to be served on all counsel of record via the Court's CM/ECF system.

*/s/ Mark P. Gaber*
Mark P. Gaber

*Counsel for Plaintiff*