**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CAMPAIGN LEGAL CENTER, ) | |
| ) | |
| Plaintiff, ) | Civ. No. 18-53 (TSC) |
| ) | |
| v. ) | |
| ) | REPLY IN SUPPORT OF |
| FEDERAL ELECTION COMMISSION, ) | MOTION TO DISMISS |
| ) | |
| Defendant. ) | |
| ) | |

**FEDERAL ELECTION COMMISSION'S REPLY**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

Kevin Deeley
Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Benjamin A. Streeter III
Attorney
bstreeter@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street NE
Washington, DC 20463
(202) 694-1650

April 9, 2018

**TABLE OF CONTENTS**

*Page*

ARGUMENT ............................................................................................................................3

I.    A CONCRETE AND PARTICULAR INJURY, NOT A MERE RIGHT
TO SUE, IS REQUIRED FOR ARTICLE III STANDING............................................3

II.   *JUDICIAL WATCH* AND OTHER CASES CONFIRM THAT CLAIMANTS IN
FECA DELAY SUITS MUST DEMONSTRATE A DISCRETE INJURY TO
THEMSELVES................................................................................................................7

III.  CLC HAS ESSENTIALLY ABANDONED ITS APA CLAIM, WHICH MUST
BE DISMISSED ...........................................................................................................11

CONCLUSION.........................................................................................................................12

Plaintiff Campaign Legal Center's ("CLC") opposition to the motion to dismiss filed by defendant Federal Election Commission ("Commission" or "FEC") fails to show that CLC has the Article III injury required to maintain this suit alleging a failure to act or unlawful delay by the FEC in handling an administrative complaint.  (*See* FEC Mem. in Supp. of Mot. to Dismiss (Docket No. 16) ("FEC Mem.") at 5-12.)  CLC argues that its lawsuit should proceed simply because the text of 52 U.S.C. § 30109(a)(8)(A) provides CLC with a right to sue if the Commission fails to act upon its administrative complaint within a 120-day period.  (CLC Mem. in Opp'n. to FEC's Mot. to Dismiss (Docket No. 18) ("Opp.") at 1.)  However, Article III standing cannot be granted by Congress; instead, CLC must demonstrate a discrete injury.

As the Commission has shown (FEC Mem. at 7-12), CLC failed to plead any concrete or particularized injury here.  Far from showing how the FEC's alleged failure to act on its complaint affects CLC "in a personal or individual way," *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 n.1 (1992), CLC has merely asserted a general interest in seeing the agency enforce the law promptly.  But CLC cannot "establish injury in fact merely by alleging that [it] has been deprived of the knowledge as to whether a violation of [FECA] has occurred," *Common Cause v. FEC,* 108 F.3d 413, 418 (D.C. Cir. 1997).

CLC does not dispute that a party challenging the FEC's *dismissal* of an administrative complaint under section 30109(a)(8)(A) must show a cognizable injury, but it claims that all complainants who allege *delay* in the processing of their complaints automatically have constitutional standing, a proposition for which there is no support.  On the contrary, a court in this district reached the opposite conclusion after a careful analysis that relied heavily on the D.C. Circuit's reasoning in *Common Cause, see Judicial Watch v. FEC*, 293 F. Supp. 2d 41, 48 (D.D.C. 2003), and relevant later decisions reflect the same principle.  Just as in the dismissal

context, in which the standing issues have more often arisen, no "discrete injury" flows simply from an alleged FEC delay or failure to process an administrative complaint within any particular time. Yet consistent with its claim that it needs only a statutory right to sue, CLC makes no real effort to show informational or any other injury. Because CLC cannot show any basis for Article III standing, there is no jurisdiction for CLC's claims and this case must be dismissed.[1]

## ARGUMENT

### I.   A CONCRETE AND PARTICULAR INJURY, NOT A MERE RIGHT TO SUE, IS REQUIRED FOR ARTICLE III STANDING

In its opening brief, the Commission showed that plaintiff CLC lacks Article III standing to pursue this suit seeking relief for alleged failure to act and/or unlawful delay by the FEC in handling CLC's administrative complaint regarding contributions that GEO Corrections Holdings, Inc. ("GC Holdings") allegedly made in violation of the Federal Election Campaign Act's ("FECA") ban on federal contractor contributions. The FEC showed that CLC has no Article III standing because it has failed to allege or demonstrate any concrete and particularized injury, and the FEC explained that standing cannot rest on a broad desire to see federal law enforced. (*See* FEC Mem. at 7-9.) In particular, CLC has failed to establish any informational injury because a mere desire for a determination by the FEC that FECA's ban on federal contractor contributions was violated is insufficient. (*Id*. at 9-12.) Thus, CLC's suit must be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

CLC now asserts (Opp. at 1-7) that FECA creates what CLC calls a "substantive right" for all administrative complainants to maintain lawsuits alleging a failure to act, relying

---

[1]   CLC also makes a claim of unreasonable delay pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), but the FEC showed that the APA claim must be dismissed because FECA's judicial review procedures are adequate (FEC Mem. at 12-15), and CLC now appears to have essentially abandoned the claim (*see* Opp. at 11 n.7).

primarily on a concurrence in *Lujan* and cases involving failures to respond to rulemaking petitions. However, these authorities are either not controlling or inapposite, and they do nothing to change the clear requirement that claimants like CLC must show a discrete injury, as confirmed by the majority opinion in *Lujan* and the many cases that have followed it. (*See* FEC Mem. at 5-6.) And CLC's reliance (Opp. at 2-4, 6-7) on cases like *In re American Rivers and Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004), is woefully misplaced. *American Rivers* had nothing to do with Article III standing. The Court of Appeals did conclude that even if an agency had the discretion to reject a rulemaking petition, that authority did not constitute a reason for finding an unlawful delay suit unavailable. 372 F.3d at 418-19. There was, however, no challenge to the standing of the plaintiffs in that opinion. *Id.* And although plaintiffs do cite to one out-of-circuit district court decision with a conclusory statement that the plaintiffs in that case possessed standing, the opinion contains no analysis of the particularized injury requirement. *Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 539 (S.D.N.Y. 2009). That may be because the case involved conditions at immigration detention facilities and the plaintiffs included two foreign nationals who had themselves been detainees, thus presenting a far more concrete potential injury than plaintiff alleges here. In any event, *Families for Freedom* is contrary to the directly applicable authority in this jurisdiction on which the Commission relies, as explained below. *See infra* Part II.

To the extent that CLC is claiming that it need not demonstrate a discrete injury because Congress created a "substantive" right to file delay suits in section 30109(a)(8), that right is more properly considered a procedural one. A "procedural right" is defined as a "right that derives from legal or administrative procedure; a right that helps in the protection or enforcement of a substantive right." *Landrum v. Blackbird Enters., LLC,* 214 F. Supp. 3d 566, 570 (S.D. Tex.

2016) (quoting *Black's Law Dictionary* (10th ed. 2014)).  A substantive right, by contrast, is one "that can be protected or enforced by law; a right of substance rather than form."  *Id.*  In fact, the D.C. Circuit described those allegedly harmed solely by an FEC failure to act under section 30109(a)(8)(A) as suffering an asserted injury that "parallels the 'procedural injury' the Supreme Court held insufficient in *Lujan*."  *Common Cause,* 108 F.3d at 418.

FECA's structure and legislative history indicate that delay suits do not create a right of substance.  FECA contains no provision imposing upon the Commission any specific time period in which to complete the processing of an administrative complaint.  And contrary to CLC's claims about resolving FEC matters before elections (Opp. at 8-11 & n.5), there is no particular time frame in which the Commission must act on an administrative complaint.  Indeed, the D.C. Circuit summarily reversed another district court's application of a presumption that the agency was required to address such matters even within a two-year cycle.  *See In re Nat'l Cong. Club*, Nos. 84-5701, 84-5719, 1984 WL 148396, at *1 (D.C. Cir. Oct. 24, 1984) (per curiam); *accord Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996) (explaining that section 30109(a)(8) is "specific," "purposely designed to ensure fairness not only to complainants but also to respondents," and that "in formulating those procedures Congress, whose members are elected every two or six years, knew full well that complaints filed shortly before elections, or debates, might not be investigated and prosecuted until after the event" but nevertheless chose not "to allow judicial intervention in the face of such exigencies").  Similarly, as the FEC previously explained, the statutory 120-day period is simply a jurisdictional threshold before which suit may not be brought, not a timetable within which the Commission must resolve an administrative complaint.  *See* Mem. at 3-4; *Stockman v. FEC*, 138 F.3d 144, 152 (5th Cir. 1998) (FECA "does not creaet a deadline in which the FEC must act" on administrative complaints).

The legislative history plaintiff cites, the floor remarks of Senator Claiborne Pell (Opp. at 4 n.1), also provides strong support for the proposition that the right to challenge a failure to act is merely a procedural right designed to protect the substantive right to challenge the dismissal of an administrative complaint found in section 30109(a)(8).  As Senator Pell stated, giving administrative complainants the right to sue for failure to act on complaints ensures that the "Commission does not shirk its responsibility to decide" whether to pursue the case.  *Id.*  Failure to act suits protect the substantive right to challenge unlawful dismissals.

As the Supreme Court has already concluded, "deprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing."  *Summers v. Earth Island Inst.,* 555 U.S. 488, 496 (2009).  In *Summers*, the plaintiffs alleged that they were deprived of the opportunity to comment on a proposed salvage sale of standing timber in violation of U.S. Forest Service regulations.  The court concluded that "[o]nly a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy."  *Id.* (emphasis in original).  CLC relies heavily upon the fact that Congress passed section 30109(a)(8)(A)'s failure to act provision, but "[i]t makes no difference that the procedural right has been accorded by Congress."  *Id.*  Although passage of such a right "can loosen the strictures of the redressability prong" of the standing inquiry, "the requirement of injury in fact is a hard floor of Article III jurisdiction *that cannot be removed by statute*."  555 U.S. at 497 (emphasis added).  Plaintiffs bringing citizen suits must show that they are injured "in a concrete and personal way"; actions that seek "to vindicate the public's nonconcrete interest in the proper administration of the laws" which are "at the behest of Congress" but without "any showing of concrete injury" would "exceed Article III's limitations."  *Id*. (internal

quotations omitted).  Thus, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.  Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins,* ___ U.S. ____, 136 S. Ct. 1540, 1548 (2016).

Despite all this, CLC flatly asserts that for standing purposes, "CLC's injury-in-fact is the FEC's failure to act upon its administrative complaint."  (Opp. at 4.)  CLC relies on Justice Kennedy's concurrence in *Lujan* for the general principle that Congress can create new statutory rights or entitlements that can support standing.  (*Id*. at 2, 4.)  But that same concurrence emphasized that "Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitle to bring suit," and under Article III "the party bringing suit must show that the action injures him in a concrete and personal way."  504 U.S. at 579 (internal quotations omitted).  All plaintiffs, including CLC, must establish the "irreducible constitutional minimum" of standing as articulated by the majority in *Lujan*.  504 U.S. at 560-61.  But CLC makes no effort to demonstrate any concrete injury in this case.  Instead, as the FEC showed (Mem. at 7-9), CLC desires only to see the law generally enforced, which is insufficient to support standing.

**II.**    ***JUDICIAL WATCH* AND OTHER CASES CONFIRM THAT CLAIMANTS IN FECA DELAY SUITS MUST DEMONSTRATE A DISCRETE INJURY TO THEMSELVES**

It is clear that those who seek to maintain a challenge alleging that the FEC has unlawfully delayed or failed to act on an administrative complaint under section 30109(a)(8) must show a concrete and particularized injury to support Article III standing.  CLC argues (Opp. at 5-6) that the Commission errs in relying mainly on FECA dismissal cases to show that

CLC has this burden and has failed to carry it, claiming that delay cases are entirely different because they involve allegations of "inaction" rather than "action" in the FECA context. But CLC fails to clearly explain why that distinction is material here and it offers no direct legal support.

In fact, as CLC admits (Opp. at 6-7), at least one key decision in this district came to the opposite conclusion. In *Judicial Watch, Inc. v. FEC*, 293 F. Supp. 2d 41 (D.D.C. 2003), plaintiffs brought suit against the Commission pursuant to section 30109(a)(8), alleging that the agency had failed to timely respond to or investigate an administrative complaint within 120 days. The court rejected claims of informational injury, but it went on to separately address one plaintiff's "claim that the Commission's delay in responding to his claim is, in and of itself, an injury in fact . . . separate from informational injury." *Id*. at 48. The court found "no basis in the law for this position." *Id*. Noting that the claim amounted to an assertion that the FEC's "delinquency in acting on [the administrative] complaint deprived [plaintiff] of the benefit of FECA's timetable for processing complaints," *id*., the court evaluated the claim in light of the D.C. Circuit's guidance in *Common Cause*, 108 F.3d at 418-19, in which "a similar situation was presented," *Judicial Watch*, 293 F. Supp. 2d at 48. The *Common Cause* plaintiff had claimed that the FEC's failure to provide "a prompt and lawful resolution of the complaint" had deprived the plaintiff of "a statutorily promised benefit that is personal to the complainant," but the D.C. Circuit rejected that argument for standing, explaining that it paralleled the kind of "procedural injury" that *Lujan* had found insufficient. *Id*. "The [D.C. Circuit] made clear that while the FEC's failure to act within the 120-day period of [section 30109(a)(8)(A)] conferred *a right to sue*, it did not also confer standing." *Judicial Watch*, 293 F. Supp. 2d at 48 (emphasis in original). Instead, the provision "confers a right to sue upon parties *who otherwise already have*

8

*standing.*" *Id*. (quoting *Common Cause*, 108 F. 3d at 419) (emphasis added by *Judicial Watch*). Applying *Common Cause,* the *Judicial Watch* court thus concluded that the plaintiff before it had presented only a "procedural injury" and that an administrative complainant could not "establish standing merely by asserting that the FEC failed to process its complaint in accordance with law." *Id*. (quoting *Common Cause*, 108 F.3d at 419).

Of course, trying to base standing merely on an alleged FEC failure to "process [a] complaint in accordance with the law" is precisely what CLC is doing here. And CLC's efforts to minimize the force of *Judicial Watch*'s reasoning are unavailing. In particular, CLC's reliance (Opp. at 6-7) on *American Rivers* is again misplaced, since that case had nothing to do with Article III standing. *See supra* p. 3; 372 F.3d 413.

Later cases from this District that do address standing to bring delay suits pursuant to section 30109(a)(8) reflect agreement with the analysis in *Judicial Watch*. In *Alliance for Democracy v. FEC*, 335 F. Supp. 2d 39 (D.D.C. 2004), the court held, *inter alia*, that plaintiffs had failed to establish informational injury sufficient to support standing for claims that the FEC had failed to act on their complaint. The court added that "under Article III, it is not enough for [a plaintiff] to allege that it was injured because the Commission unlawfully delayed the investigation; plaintiffs must show a 'discrete injury flowing from' such alleged delay." *Id*. at 48 (citing *Common Cause*, 108 F.3d at 418 (quoting *Lujan*)). And in the later dismissal action related to the 2004 *Alliance for Democracy* decision, the court relied heavily on the *Judicial Watch* analysis in finding that a lack of informational injury precluded standing to challenge the dismissal of an administrative complaint, showing that the injury analysis is in fact comparable in the delay and dismissal contexts. *All. for Democracy v. FEC*, 362 F. Supp. 2d 138, 147-49

9

(D.D.C. 2005). Whether the FEC is not pursuing administrative respondents due to alleged delay or dismissal, the claimants' alleged injury is still rooted in the same thing.

CLC still makes no real effort to show informational injury, consistent with its position that delay claimants need not show any injury beyond delay itself. CLC does now suggest in a footnote (Opp. at 6 n.4) that it does not know the "true source" of GC Holdings' reported contributions, suggesting that its alleged parent GEO Group may be the source. However, CLC makes no effort to show how that alleged uncertainty has caused it any informational injury. And in any case, standing must be shown in CLC's complaint. As the FEC explained (Mem. at 3-4), the judicial complaint "must contain sufficient factual matter, accepted as true, to 'state a claim [of standing] that is plausible on its face,'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and "the necessary factual predicate may not be gleaned from the briefs and arguments," *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 235 (1990) (internal quotation marks omitted). CLC's court complaint does not show informational injury.

In sum, even though delay suits are authorized by FECA, the cases above make clear that CLC cannot assume, as it does, that an allegation of a failure to act under section 30109(a)(8) alone gives it standing. CLC must instead show how the Commission's alleged delay has caused particularized injury to CLC's interests. CLC asserts that unless its delay suit is permitted to proceed, the FEC will be able to insulate itself from "meaningful judicial review." (Opp. at 10-11 & n.6.) However, judicial review remains available for delay claims where plaintiffs have standing, just as with dismissal claims. In effect, CLC argues that Congressional intent will be frustrated if the same standards that apply to dismissal suits also apply to delay suits. But CLC fails to explain why the scope of constitutional standing to bring delay suits would be broader

than that for dismissal suits.  Under the principles of *Lujan*, *Summers*, and *Common Cause*, it is clear that Congress cannot create constitutional standing legislatively and that parties enforcing a procedural right like that established by FECA's failure-to-act suit provision must still show Article III standing.  Because CLC has shown no concrete or particularized injury, it lacks standing.  And because CLC has failed to present an Article III case or controversy, the FEC's motion to dismiss should be granted.

### III.   CLC HAS ESSENTIALLY ABANDONED ITS APA CLAIM, WHICH MUST BE DISMISSED

Finally, plaintiff all but concedes that its APA claim should be dismissed.  As the FEC showed (Mem. at 12-15), FECA itself provides an adequate mechanism for judicial review of allegations that the agency has failed to act on administrative complaints, through section 30109(a)(8)(A).  CLC makes no effort to rebut any of the Commission's arguments in this regard, but merely offers a cryptic footnote stating that CLC "does not object" to dismissal of the APA claim if "the Court concludes section 30109(a)(8)(A) provides an adequate mechanism for judicial review."  (Opp. at 11 n.7.)  That is insufficient to preserve CLC's APA claim.

## CONCLUSION

For the above reasons, the FEC's motion to dismiss should be granted.  CLC has failed to demonstrate the concrete and particularized injury necessary to establish Article III standing.

Respectfully submitted,

| | |
|---|---|
| Lisa J. Stevenson (D.C. Bar No. 457628) | Harry J. Summers |
| Acting General Counsel | Assistant General Counsel |
| lstevenson@fec.gov | hsummers@fec.gov |
| | |
| Kevin Deeley | *Benjamin A. Streeter III* |
| Associate General Counsel | Benjamin A. Streeter III |
| kdeeley@fec.gov | Attorney |
| | bstreeter@fec.gov |
| | |
| | FEDERAL ELECTION COMMISSION |
| | 1050 First Street NE |
| | Washington, DC 20463 |
| April 9, 2018 | (202) 694-1650 |